The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: April 9 2014

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-30402 |
| | ) | |
| Dennie Lee Baker and | ) | Chapter 13 |
| Loretta Sue Baker, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION
### REGARDING MOTION FOR RELIEF FROM JUDGMENT

This case is before the court on the Motion to Re-file Adversary Proceeding [Doc. # 55], filed by Stacy A. Landis, as supplemented by the Motion for Relief from Judgment [Doc. # 77], filed by Stacy A. Landis and Bonita Landis (together, "Motion"), Debtors' response and supplemental response [Doc. ## 59 & 86], and a reply [Doc. # 88], also filed by Stacy A. Landis and Bonita Landis. The Motion seeks relief from an order entered by the court on May 24, 2011, striking an adversary complaint filed by Creditor Stacy Landis on the docket in this Chapter 13 case rather than having been commenced as a separate adversary proceeding.

The district court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The underlying document that was stricken from the court

record purports to commence proceedings to determine the dischargeability of a debt, which is a core proceeding that this court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I). The Motion also concerns the adjustment of the debtor-creditor relationship between Movant Stacy A. Landis, who filed a proof of claim in this case for $45,150.71. As such, it is also a core proceeding that this court may hear and decide under 28 U.S.C. § 157(b)(2)(O).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this memorandum of decision, the court has examined the submitted materials, including the Affidavit of Jody Smith filed in support of the Motion, [Doc. # 78], considered all of the arguments of counsel and reviewed the entire record of the case. For the reasons that follow, the court will grant the Motion on behalf of Stacy A. Landis, only, to the extent it seeks an order vacating the court's May 24, 2011, order.[1]

## BACKGROUND

Given the nature of the issues raised by the Motion, detailed recitation of the case background and procedural facts gleaned from the court docket and record is necessary. Debtors Dennie Lee Baker and Loretta Sue Baker ("Debtors") filed their Chapter 13 petition commencing this case on January 31, 2011. Among the creditors listed on their Schedule F-Creditors Holding Unsecured Nonpriority Claims are Bonnie Landis and Stacy Landis, at 14597 Rd. 31, Antwerp, OH 45813. [Doc. # 1, pp. 18 & 21/51]. As to each, the debt is marked J, signifying that it is a joint debt of both debtors. Debtors scheduled it as to both Bonnie Landis and Stacy A. Landis as unliquidated in the amount of $44,000 and identified the nature of the claim as based on a "judgment arising in Case NO. C109-268." In response to Question 4 on their Statement of Financial Affairs, Debtors disclosed a civil lawsuit captioned Stacy A. Landis, et al -vs- Dennis Baker, et al, Case No. C109-268 in the Paulding County Common Pleas Court in Paulding, Ohio with its status as Judgment. [Doc. # 1, p. 28/51].

The Clerk of the this court gave notice of commencement of Debtors' Chapter 13 case and important deadlines to all creditors and parties in interest on February 9, 2011 ("Notice"). [Doc. ## 9, 12]. The Notice states that the deadline to challenge dischargeability of certain debts is May 9, 2011, and the

---

[1] The court erroneously entered an order on August 25, 2011, granting the Motion before the hearings thereon had been concluded. [Doc. # 91]. On August 26, 2011, the court *sua sponte* immediately vacated the order as a clerical error under Rule 60(a) of the Federal Rules of Civil Procedure, which applies in this case pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure.

deadline to file a proof of claim is June 6, 2011. The Certificate of Notice listed Bonnie Landis, 14597 Rd. 31, Antwerp, OH 45813-9323 and Stacy A. Landis, 14597 Rd. 31, Antwerp, OH 45813-9323 as parties to whom the Notice was sent by the Clerk by first class mail. The Returned Mail docket entry does not contain any mail to Bonnie Landis or Stacy A. Landis from the court as having been returned to the Clerk as undeliverable. [Doc. # 5].

On February 28, 2011, Stacy Landis filed a proof of claim in the amount of $45,150.71 based upon a "[j]udgment for fraudulent non-disclosure and conversion." [Proof of Claim # 7-1, Claims Register]. The Basis for Claim is stated as "Judgment for fraudulent non-disclosure and conversion." There are no attachments to the proof of claim form. The payment notice address was the same Antwerp, Ohio address for Stacy Landis as scheduled by Debtors. The address in the proof of claim to which payments should be sent by the Chapter 13 Trustee was identified as c/o Daniel R. Michel, attorney-at-law, 901 Ralston Avenue Defiance, OH 43512. Although Debtors objected to many claims, they did not object to the Stacy Landis claim. The Stacy Landis claim was thus an allowed general unsecured claim for purposes of distribution under the plan. *See* 11 U.S.C. § 502(a). No proof of claim was filed by or on behalf of a Bonnie Landis or a Bonita Landis.

Debtors filed their original proposed Chapter 13 plan on February 4, 2011. [Doc. # 7]. Both the Clerk [Doc. # 13] and Attorney for Debtors [Doc. # 8] mailed copies of the proposed plan to each of Bonnie Landis and Stacy A. Landis at 14597 Rd. 31, Antwerp. OH 45813. The plan proposed a 36% dividend on unsecured claims. On June 14, 2011, Debtors filed and served on all creditors, including Landis, an Amended Chapter 13 Plan proposing to pay the Chapter 13 Trustee an additional lump sum amount withdrawn from a 401(k) plan resulting in $20,000 total on hand for the Trustee to distribute, and to pay a 25% dividend to unsecured creditors. Stacy A. Landis, and despite the lack of a proof of claim on her behalf, Bonita Landis, filed an objection to the Debtors' proposed Amended Chapter 13 Plan on July 18, 2011. [Doc. # 61]. After an Affidavit filed by Debtor Dennie Lee Baker evidencing income limited to timed-out unemployment benefits was filed, [Doc. # 79], an Agreed Order between Debtors and the Chapter 13 Trustee was entered authorizing Debtors to withdraw the lump sum funds from a 401(k) plan, the Amended Chapter 13 Plan was confirmed by order of the court entered on October 25, 2011, [Doc. # 114], over the objection of Stacy A. Landis and Bonita Landis after there was no appearance on their behalf at the confirmation hearing held on August 2, 2011, [*see* Doc. # 87].

In the meantime, on May 9, 2011, two documents were electronically filed by Attorney Jerry

Goldenetz ("Goldenetz") through the court's CM/ECF electronic case filing system. This court has adopted routine electronic filing protocols and procedures as set forth in the court's Electronic Case Filing (ECF) Administrative Procedures Manual ("APA"). *See* Local Bankruptcy Rule 5005-4. The APA is available as a link through the local court rule and otherwise on the court's website under the tab Electronic Case Filing. Under the APA, ECF is "operational for all types of cases and filings, including...adversary proceedings." Moreover, unless otherwise ordered by the court, "ECF is mandatory for all attorneys, trustees, registered creditors and registered professional persons."

The first document electronically filed by Goldenetz on May 9, 2011, appears at Doc. # 44 on the main Chapter 13 case docket. This document was filed using the docket code for a Request for Issuance of Summons. The attached PDF document is actually a Form B104 Adversary Proceeding cover sheet. The second document electronically filed by Goldenetz on May 9, 2011, appears at Doc. # 45 on the main Chapter 13 case docket. This document was also filed using the docket code for a Request for Issuance of Summons. The attached document is actually an unsigned Complaint to Determine Dischargeability of Debt, captioned "Stacy A. Landis Plaintiff Vs. Dennie Lee Baker Loretta Sue Baker Defendants." There is no mention anywhere in this document of a Bonnie or Bonita Landis and the body of the document refers only to a singular Plaintiff. There are no attachments to this second document. The May 9, 2011, filing date of the two documents is the deadline for filing certain complaints to determine dischargeability of debts set in the Clerk's Notice. [*See* Doc. ## 9,12].

Both filings were problematic, even beyond the obvious mistake that neither of the PDFs was a Request for Issuance of Summons, which was the filing code used by Goldenetz's staff. The ECF problem with both filings is that Goldenetz needed to electronically open and commence a separate adversary proceeding instead of just filing them on the main Chapter 13 case docket. Moreover, the complaint document is not signed by Goldenetz, either for purposes of electronic filing with a /s/ or manually, and the required filing fee was not paid. Had it been correctly opened and filed in ECF as a separate adversary proceeding, a fee prompt would have occurred requiring payment of the filing fee. The radial button beside each erroneous docket entry shows that Debtors' attorney received electronic notice of the filing of the complaint and the case cover sheet in the Chapter 13 case.

On May 10, 2011, the Clerk entered following notice on the docket in Debtors' case for the filing at Doc. # 45:[2]

---

[2]The Clerk also entered on May 10, 2011, a similar notice as to the Case Cover Sheet filing at Doc. # 44.

Notice Requiring Corrective Document (Re related document(s) 45 Request for Issuance of Summons) Modified on 5/10/2011 - INCORRECTLY DOCKETED – ADVERSARY MUST (sic) OPENED AND FILING FEE PAID – DOCUMENT IS NOT A REQUEST FOR ISSUANCE OF SUMMONS, BUT RATHER AN ADVERSARY COMPLAINT

But Goldenetz was not sent this notice because his name was not entered into the case for purposes of receiving electronic notices. His secretary, who had received ECF training in early 2011 but who had never filed an adversary complaint, filed the dischargeability complaint at Goldenetz's request. [Doc. # 78, Smith Aff.]. In doing so, she not only failed to open and file it as a separate adversary proceeding, but also failed to check the box indicating that Goldenetz represented Stacy Landis to add him to the case. Goldenetz finally added himself to the case on July 18, 2011, by checking the proper box when he electronically filed the objection to confirmation of Debtors' Chapter 13 plan.

On May 24, 2011, on referral from the Clerk after Goldenetz, on behalf of Plaintiff Stacy A. Landis, had failed to respond to the Clerk's Notices Requiring Corrective Documents and properly file the complaint in a separate adversary proceeding and pay the required filing fee as directed by the Clerk, the court entered an order that the complaint be "stricken from the court record and of no effect in this proceeding." [Doc. # 47].[3] In so ordering, the court noted several deficiencies, including that the document is unsigned and does not bear the proper electronic signature of counsel, that an adversary proceeding must be separately electronically opened and commenced, and that no filing fee had been paid. [*Id.*].

According to counsel's secretary, after filing the complaint on the docket of Debtors' Chapter 13 case, she checked daily for a response from the court, which would have been issuance of a summons, presumably in an email, and, not surprisingly, found none. [Doc. # 78]. Had she checked the case docket, she would have seen the Clerk's Notices Requiring Corrective Documents and eventually the court's orders striking the documents. Finally, in early June and at the request of Goldenetz, another secretary contacted the court and was informed that the complaint had been stricken. [*Id.*]. On June 16, 2011, Goldenetz filed the Motion to Refile Adversary Proceeding, with Stacy A. Landis as the movant. [Doc. # 55]. At a hearing on the motion held on July 20, 2011, Goldenetz characterized the motion as a motion under Rule 60(b) and asked for leave to file a supplement to the motion, which the court granted. The Motion to Refile Adversary Proceeding was then supplemented with a Motion for Relief from Judgment, with Stacy A. Landis and Bonita Landis as movants. [Doc. # 77]. After a hearing held on October 18, 2011, which both Goldenetz

---

[3] A similar order was also entered with respect to the case cover sheet filed at Doc. # 44. [Doc. # 46].

5

and Debtors' attorney attended by telephone, the court took the matter under advisement pending completion of Debtors' plan and their discharge. Debtors have now completed their plan, pursuant to which Stacy A. Landis has been paid a dividend of $14,899.73. [Doc. # 125].[4] After the requirements of 11 U.S.C. § 1328(a) and (h) were completed, Debtors received their discharge on August 8, 2013. [Doc. # 133]. This matter relating to Stacy A. Landis's dischargeability complaint is, thus, ripe for decision.

## LAW AND ANALYSIS

The Motion is brought under Rule 60(b)(1) of the Federal Rules of Civil Procedure, made applicable in this case by Federal Rule of Bankruptcy Procedure 9024. Under Rule 60(b)(1), "the court may relieve a party or its legal representative from a final judgment, order or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Bonita Landis and Stacy Landis ("Creditor") rely on the "excusable neglect" provision in requesting relief from the court's order striking their complaint. Specifically, movants ask that the court vacate that order and allow the dischargeability complaint to now be properly filed.

An "excusable neglect" determination involves a two-part analysis. The court must not only find neglect, but also that such neglect is excusable. *Allied Domecq Retailing USA v. Schultz (In re Schultz)*, 254 B.R. 149, 153 (B.A.P. 6th Cir. 2000). "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to *esp[ecially] through carelessness*'" *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (emphasis in original). In this case, Creditor's failure to respond to the Clerk's Notice requiring him to address the improper filing of his dischargeability complaint constitutes neglect. The court must then determine whether such neglect is excusable.[5] In making this determination, clients are held accountable for their attorneys' acts and omissions. *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 594-95 (6th Cir. 2002). "Thus, in assessing a claim of excusable neglect, 'the proper focus is upon whether the neglect of [the parties] and their counsel was excusable.'" *Id*. at 595 (quoting *Pioneer Inv. Servs co. v. Brunswick Assocs. Ltd P'Ship*, 507 U.S. at 397).

The Sixth Circuit directs a different test in the context of Rule 60(b)(1) excusable neglect

---

[4] The plan percentage was increased from 25% to 33% by stipulated order. [Doc. # 121].

[5] To the extent that Debtors' argument focuses on whether the improper filing of the complaint constitutes excusable neglect, the court finds its argument misplaced. *See* Fed. R. Bankr. P. 7005; Fed. R. Civ. P. 5(d)(4) ("The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice.") It is Creditors' neglect in failing to address the filing deficiencies that resulted in the court's order striking their complaint, and it is that neglect that the court addresses in determining whether Creditor is entitled to relief from that order.

determinations depending on whether the court considered the true merits of a party's claim or not. *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012). Where the order or judgment at issue did not involve a consideration of the merits, the Sixth Circuit looks to the United States Supreme Court's *Pioneer* analysis to decide whether a party's neglect is excusable in the context of Bankruptcy Rule 9006(b)(1). *See, e.g., Tri-Corner Inv. LLC v. First Defense Int'l Group, Inc.*, 361 Fed. Appx. 629, 631 (6th Cir. 2010); *Gumble v. Waterford Twp.*, 171 Fed. Appx. 502, 506 (6th Cir. 2006). The Court in *Pioneer* looked to five factors in stating that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. Where the order at issue involved a consideration of the merits, however, the five *Pioneer* factors are not controlling. *Yeschick*, 675 F.3d at 629 (quoting *Jinks v. AlliedSignal, Inc.*, 2590 F.3d 381, 386 (6th Cir. 2001)). Then, only three factors control: whether the party: (1) "seeking relief is culpable"; (2) "opposing relief will be prejudiced"; and (3) "seeking relief has a meritorious claim or defense." *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003). And in applying the three factor test, only where the party seeking relief can first demonstrate a lack of culpability will the court even consider the other two factors. *Id.* (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). In order for the court to apply the appropriate test to determine whether Creditor's neglect is excusable, the court must thus determine if the merits of the underlying claim were considered. In this case, the court's order striking the complaint that Creditor seeks to vacate was based on purely procedural shortcomings, with no consideration of the merits involved. Because the merits were not considered by the court, it will apply the five factors outlined by the court in *Pioneer*.

In this case, the court first addresses the reason for Creditor's failure, or more specifically, for the failure of Creditor's attorney, to timely address the deficiencies identified in the Notice Requiring Corrective Document entered by the Clerk, which, in turn, resulted in the court's order striking the complaint. *See Pioneer*, 507 U.S. at 396–97 (explaining that clients must "be held accountable for the acts and omissions of their chosen counsel"). The cause of counsel's failure to act in a timely manner is two fold: his secretary's error in failing to check the box indicating that counsel represented Creditor when the complaint was electronically filed and then not checking the court's docket in Creditor's Chapter 13 case. As a result, Creditor's attorney did not receive the Notice Requiring Corrective Document entered on the

docket, nor did he receive notice of the court's order striking the complaint from the court record. Thereafter, counsel's office staff checked daily "for a response from the Court," [Doc. # 78, Smith Aff.], which the court construes as checking for an email response and not checking the court's docket, regarding the issuance of a summons, which would typically be received shortly after filing a complaint, in a day or two at most. Had the docket been checked daily, the Clerk's notices would have been immediately discovered and presumably timely acted upon before the court's order striking the complaint was entered.

Although Goldenetz's his secretary did not routinely file adversary complaints, she had received ECF training Given the fact that counsel's secretary had received ECF training in early 2011, the court does not find this to be a case in which counsel was not diligent in ensuring that his staff was trained to undertake the basic tasks involved in electronically filing documents for him in the bankruptcy court. *Cf. B & D Partners v. Pastis*, No. 05–5954, 2006 U.S. App. LEXIS 11901, at *9, 2006 WL 1307480, at *3 (6th Cir. May 9, 2006) (citing 12 Moore's Federal Practice § 60.41[1][c][ii] (3d ed. 2005) and stating that "when inadvertent conduct results in judgment, a claim of mistake or excusable neglect will always fail if the facts demonstrate a lack of diligence"). Rather, his secretary's failure to check the box adding counsel to the case was a simple mistake not reasonably within counsel's control.

The more difficult issue is the second one of counsel's failure to monitor the docket. Counsel was familiar with the court process to know that the Clerk would routinely electronically issue a summons on the complaint for service by counsel. While the e-mail box designated for court filings was checked daily, there is no indication that anyone checked the docket until after a phone call to the Clerk approximately a month after the complaint was filed in the Chapter 13 case. The Sixth Circuit has repeatedly found that parties have an affirmative duty to monitor dockets to keep apprised of developments in a case, particularly regarding orders that they may wish to appeal. *Yeschick*, 675 F.3d at 629. *See also Kuhn v. Sulzer Orthopedics, Inc.*, 498 F.3d 365, 370-71 (6th Cir. 2007); *Reinhart v. U.S. Dep't of Agric.*, 39 F. App'x 954, 956-57 (6th Cir. 2002)(party neither called the clerk nor checked the docket for an anticipated a ruling on a petition). The Sixth Circuit's view of this duty seems to have been enhanced in the electronic filing environment, as now "[a]ttorneys may monitor the docket from the comfort of their offices; they simply need to log-on to the CM/ECF system from a computer." *Yeschick*, 675 F.3d at 629. Morever, the Sixth Circuit emphasized in *Yeschick* "that regardless of whether email notifications are received, parties continue to have a duty to monitor the court's docket." *Id.* at 630.

In this case, however, while counsel was expecting by e-mail issuance of a summons by the Clerk,

an action the only real deadline for which is completing service within 120 days after the filing of the complaint, Fed. R. Bankr. P. 7004(a), Fed. R. Civ. P. 4(m), counsel in this case was not expecting issuance by the Clerk of corrective notices with respect to the filings. This is a different situation than the duty to monitor a docket to protect a client's rights with respect to a forthcoming determination of a decisional motion or a trial decision that could be appealed. Thus, while it was certainly in counsel's reasonable control to check the docket in the Chapter 13 case, this was not a situation in which any decision or other action by the court itself was reasonably anticipated to trigger the separate duty to monitor set forth by the Sixth Circuit. *Cf. In re Philbert*, 340 B.R. 886 (Bankr. N.D. Ind. 2006)(counsel, who missed trial because he did get scheduling order and did not check docket, knew he was initiating proceedings that had to be dealt with expeditiously and thus knew he could expect something to be happening on docket at that time). The circumstances of Goldenetz's neglect in responding to the Clerk's corrective notices in this case stand in sharp contrast to the exacerbated carelessness on display in cases like *Yeschick*. The court finds that, while the failure to monitor the actual court docket was within Goldenetz's reasonable control, his neglect in this case did not rise to the level of demonstrating a lack of diligence on his part.

As to the other *Pioneer* factors, approximately one month had passed when Creditor's attorney learned of the defective filing and order striking Creditor's complaint, at which time he filed the Motion to Re-file Adversary Proceeding. Creditor's delay in addressing the improper filing in a more timely manner has had little or no impact on these judicial proceedings. Debtors' Chapter 13 plan was confirmed, they completed their plan and they have received their discharge.

Nevertheless, Debtors argue that they relied on the passage of the bar date and the lack of any timely claims regarding the dischargeability of debts when they amended their plan and proposed, and initiated efforts, to borrow exempt funds to fully fund their Chapter 13 plan. According to Debtors, such borrowing will result in adverse tax consequences and be prejudicial to Debtors. The court notes, however, that Creditor filed a timely proof of claim and has received payments from the Chapter 13 Trustee in accordance with Debtors' confirmed plan. Thus, Creditor caused no prejudice to Debtors to the extent they relied on the bar date in deciding to borrow the exempt funds. While the amount necessary to fund their Chapter 13 plan and, thus, the decision to borrow exempt funds to fully fund their plan, may have been dependent on the proofs of claim filed, Debtors fail to explain how their reliance on the debts being dischargeable was relevant to their decision to amend their plan and propose borrowing exempt funds. The court also notes that Creditor filed his Motion to Refile Adversary Proceeding just two days after Debtors filed their

amended plan and more than four months before the plan was even confirmed by the court. For these reasons, the court finds Debtors' assertion of prejudice lacks merit and further finds that Creditor's delay in responding to the clerk's corrective notice and addressing the defective filing of his complaint, in fact, caused little or no prejudice to Debtors.

Finally, although the failure to monitor the court's docket was a mistake within the reasonable control of Creditor's attorney and his staff, there is no suggestion of any bad faith. The court specifically finds that Creditor and his attorney acted in good faith.

Considering all of the foregoing circumstances, the court concludes that the failure of Creditor's attorney to respond to the Clerk's Notice Requiring Corrective Document by correctly filing Creditor's adversary complaint constitutes "excusable" neglect. The court will, therefore, grant Creditor's Motion.

The court will vacate its order striking Creditor's complaint and will order the Clerk to re-docket Creditor's complaint in a separate adversary proceeding. The complaint will be deemed filed on May 9, 2011, pursuant to Rules 3 and 5(d)(4) of the Federal Rules of Civil Procedure, made applicable in this case by Federal Rules of Bankruptcy Procedure 7003 and 7005. *New Boston Dev. Co. v. Toler (In re Toler)*, 999 F.2d 140, 142 (where bankruptcy court clerk returned a complaint to counsel for noncompliance with a local rule, it was determined to have been filed when first received by the clerk and not some 60 days later when it was returned by counsel in compliance with the local rule, as "mistakes or errors can be corrected after the document has been filed."); *see Shuler v. Garrett*, 715 F.3d 185, 186 (6th Cir. 2013)(Rule 59 motion electronically filed under incorrect docket number deemed timely filed notwithstanding counsel's filing mistake); *Hildreth v. Dunaway (In re Dunaway)*, 346 B.R. 449, 454 (Bankr. N.D. Ohio 2006)(Judge Speer treated complaint as filed on day of receipt even though it was improperly filed in the main bankruptcy case rather than in a separate adversary proceeding); *In re Rutherford*, 427 B.R. 656 (Bankr S.D. Ohio 2010)(where counsel made exactly the same mistakes as Goldenetz in this case, complaint deemed filed on date received despite the mistakes). The court will afford Creditor fourteen days from entry of the court's order granting the Motion to pay the required filing fee of $293.00, absent which the complaint will be dismissed without further notice or hearing. Pursuant to Bankruptcy Rule 7004(m), the court finds cause to and will also extend the time for service of the summons and complaint for sixty days from the date of entry of the court's order granting the Motion.

The court will enter a separate order in accordance with this Memorandum of Decision.

###